Argued and submitted January 31, affirmed February 28, petition for review denied
June 18, 1996 (323 Or 483)

## STATE OF OREGON,
*Respondent,*

*v.*

## THOMAS EDMOND MARQUEZ,
*Appellant.*

### (CF93-0540; CA A82503)

912 P2d 390

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Pursuant to a plea agreement, defendant pled guilty to six counts of "computer crime," ORS 164.377(3), after he illegally accessed the Umatilla County computer system. The sentencing court imposed a presumptive 18-month probationary sentence on each conviction. The court also ordered defendant to pay $14,728 in restitution to the county. ORS 137.106. On appeal, defendant challenges only the order of restitution. We affirm.

■ We first address the state's argument that the claim of error is not reviewable under ORS 138.222(2)(a). That section precludes review of "[a]ny sentence that is within the presumptive sentence[.]" The presumptive probationary sentence was imposed here, and the state's position is that restitution is part of the "presumptive sentence" that we may not review under ORS 138.222(2)(a). The state argues:

> "[T]he Supreme Court squarely held in [*State v.*] *Adams*[, 315 Or 359, 847 P2d 397 (1993),] that if appellate review of a 'sentence' is precluded by any provision in ORS 138.222(2)(a) through (d), the 'sentence' cannot be reviewed under subsection (4)(a), and this court squarely held in [*State v.*] *Nelson*, [127 Or App 741, 874 P2d 108 (1994),] that a restitution order is part of the 'sentence' for purposes of ORS 138.222(2). Reading those two cases and [*State v.*] *Martin*[, 320 Or 448, 887 P2d 782 (1994),] together, the unavoidable conclusion is that if a sentencing court imposes the 'presumptive sentence,' ORS 138.222(2)(a) precludes appellate review of *any part of* the 'sentence' imposed, including the restitution order." (Emphasis in original.)

In *State v. Thompson*, 138 Or App 247, 908 P2d 329 (1995), we held that restitution is not part of the presumptive sentence for which ORS 138.222(2) precludes review. The state's argument here does not persuade us that our holding in *Thompson* was error. Our holding was based on *State v. McFee*, 136 Or App 160, 162, 901 P2d 870, *rev allowed* 322 Or 362 (1995), where we stated that OAR 253-03-001(16) defines "presumptive sentence" as the sentence provided in the grid block and that the grid block provides the terms of incarceration or probation. Thus, it is the incarcerative or probationary terms that are "within the

'presumptive sentence' " under ORS 138.222(2)(a). Restitution is not within the grid block and is, therefore, not within the presumptive sentence, review of which is precluded under ORS 138.222(2)(a).

The state's reliance on *Nelson* does not assist it. The issue in *Nelson* was not reviewability of a presumptive sentence under ORS 138.222(2)(a) but reviewability of a sentence after a negotiated plea under ORS 138.222(2)(d). The version of ORS 138.222(2)(d) in effect at the time of the defendant's sentence in *Nelson*, precluded review of "[a]ny sentence resulting from an agreement between the state and the defendant[.]" Under that version of ORS 138.222(2)(d), we held that the restitution imposed after the defendant's negotiated plea was part of the sentence and was not reviewable.[1] ORS 138.222(2)(d) does not address review of "presumptive" sentences.

■   We turn to defendant's argument that the court erred in imposing restitution. ORS 137.106 authorizes restitution for criminal activities that have "resulted in pecuniary damages," which means "special damages, but not general damages, which a person could recover against the defendant in a civil action[.]" ORS 137.103(2). The prerequisites to imposition of restitution are (1) criminal activities, (2) pecuniary damages, and (3) a causal relationship between the two. *State v. Dillon*, 292 Or 172, 181, 637 P2d 602 (1981). At the restitution hearing, the data processing manager for the county testified that the loss that resulted from "correcting" the problem caused by defendant was $14,728, based on "lost labor and programming time and * * * down time on the computer for various departments." The losses were incurred over a month.

■   Defendant contends that there was no proof showing a causal connection between the crimes for which he was convicted and the restitution that was ordered. He first argues that he pled guilty only to accessing the county's computer on August 20, 1993, and that the restitution is for a period not covered by those crimes. Defendant claims that

---

[1] Following the Supreme Court's decision in *State v. Kephart*, 320 Or 433, 887 P2d 774 (1994), it is clear that review of restitution also would not be precluded by ORS 138.222(2)(d) as part of a "stipulated sentence" unless the parties had agreed to the restitution.

the presentence investigation states that defendant's access on August 20 was "intercepted and neutralized." Therefore, defendant argues, there is no showing that there could be any pecuniary damage related to the crimes for which he was convicted.

However, the counts to which defendant pled guilty alleged that the crimes were committed "on or about August 20," and the presentence investigation notes that defendant was suspected of an illegal access to the computer on August 18, the extent of which might not be known until a later date. Furthermore, the report notes that it was the "extent" of defendant's manipulation of the system on six illegal accesses on August 20 that was intercepted and neutralized, not that the access alone was intercepted. During the course of the August 20 access, defendant erased files in the tax assessor's office and instructed the computer to perform tasks different from those that an unknowing operator would be requesting. We agree with the state that there was evidence that all the claimed expenditures were incurred by the county as a result of unlawful entries into the computer system "on or about August 20," within the scope of the counts to which defendant pled guilty, and evidence from which the court could infer that defendant was responsible for those entries. The court could conclude that, although the "extent" of the August 20 entry was neutralized, nonetheless the county had expenses in investigating the entries. *See State v. Lindsly*, 106 Or App 459, 462, 808 P2d 727 (1991) (investigation and repair expenses incurred by victim of computer crime qualified as pecuniary damages under ORS 137.103(2)).

■ Defendant next argues that the state failed to prove damage because part of the time for which claim was made was time spent by salaried employees who would have been working anyway. He relies on *State v. Heath*, 75 Or App 425, 706 P2d 598 (1985), in which we vacated an order for restitution holding that the labor costs of the victim logging company, which were based on lost truck and supervisory time, were not directly attributable to the defendants' criminal conduct when they used their bodies to block a logging road. We reasoned that the company would have incurred those

costs regardless of the defendants' conduct that prevented the company from working in that particular area but did not prevent it from working elsewhere.

However, the county here had to work on the problems created by defendant's criminal activity, and, while doing so, was prevented from working on other county business. The facts here are analogous not to those in *Heath*, but to those in *Lindsly*, an appeal from imposition of restitution after a conviction for computer crime. We held that the investigation of the defendant's computer system break-in went beyond the temporary restriction on work activities involved in *Heath*. Investigation of the computer break-in involved expertise and specialized technology that required a diversion of substantial resources, which was damage directly attributable to the defendant's criminal activity. *Lindsly*, 106 Or App at 462. The same is true here of the damages claimed for the labor and costs of county personnel.[2] But for defendant's criminal activity, those resources would not have been diverted to investigation and interception. The court did not err in ordering restitution.

Affirmed.

---

[2] Defendant contends that a portion of the county's claim of $4,800 for lost program time was attributed to an outside service firm and that the evidence shows that that firm was paid a monthly fee and that no extra charge was made for services rendered to the county as a result of defendant's criminal activity. The county data manager recognized the assistance of the service provider but did not claim that the county lost money because of that assistance. He testified that the $4,800 was "actually time that we — two weeks of our work that we lost and will have to redo at a certain point in time." In argument to the court, defendant's attorney acknowledged that the "development time of lost programs at $4800 [is] regular work hours and [that's] what [the manager] testified to, regular work hours."