Argued and submitted September 25, restitution order vacated; otherwise affirmed
December 13, 1995

# STATE OF OREGON,
## *Respondent,*

*v.*

# PAMELA THOMPSON,
## *Appellant.*
# (93-00054CR; CA A82761)

908 P2d 329

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Katherine H. Waldo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant was convicted of theft in the first degree. ORS 164.055. As part of her sentence, the trial court ordered her to pay $7,783 in restitution. ORS 137.106. On appeal, she argues that the trial court erred when it ordered her to pay restitution. We agree with defendant and vacate the order of restitution.

In June 1991, defendant suffered an injury in the course of her employment. As a result of that injury, she filed a workers' compensation claim and received time loss benefits from October 1991 to April 1992. At some point, the workers' compensation insurer conducted an investigation and discovered that defendant had earned wages from another employer and was operating her own business while receiving time loss benefits.

In April 1993, the Hearings Division of the Workers' Compensation Board held a hearing regarding several issues involving defendant's workers' compensation claim. One of those issues was whether the insurer was entitled to recover an overpayment of time loss benefits in the amount of $7,785. The referee determined that the amount of overpayment was $1,941 and ordered that amount to be offset from defendant's other benefits; the insurer did not appeal. In July 1992, the insurer turned over the information that it had obtained during the investigation to the District Attorney for Klamath County. Subsequently, defendant was indicted:

> "[Defendant] did unlawfully and knowingly commit theft of time loss benefits in the value of $7,785.00 * * * the property of SAIF Corporation; the state further alleges that the property stolen had a value of $5,000.00 or more * * *."

In August 1993, defendant entered a plea of guilty to the charge. In her plea petition, defendant pled guilty on the factual basis that she had "received SAIF benefits while employed in Kl[amath] Co[unty]." She also requested a hearing on the amount of restitution. The trial court accepted defendant's guilty plea and scheduled a restitution hearing.

At the restitution hearing, defendant argued that the amount of restitution had already been resolved at the workers' compensation hearing, that that amount had been offset against her benefits, and as a result, that there should

be no order of restitution. The state presented as a witness the investigator from the insurer who testified and provided documentary evidence that defendant had been overpaid by $7,785. The trial court found $7,783 to be the correct restitution amount less the $1,941 already credited to defendant.[1]

■■ Defendant argues that the workers' compensation hearing "settled" the dispute between defendant and the insurer as to the amount of overpayment and that that determination precluded the trial court from ordering restitution.[2] She relies on our holding in *State v. Rodriguez*, 88 Or App 429, 745 P2d 811 (1987). In *Rodriguez*, the defendant caused an accident while under the influence of intoxicants. The defendant paid the victim's insurance company $400 as "full reimbursement" of the claim. Nevertheless, the trial court imposed additional restitution as a part of the defendant's sentence. We held that because defendant had settled the claim, the victim was barred from any recovery in a civil action. Therefore, the defendant could not be required to pay restitution in the criminal case. Thus, in *Rodriguez*, the defendant and the victim agreed on the amount owed to the victim which the defendant paid, thereby satisfying all of the restitution obligation. In this case, the insurer did not agree to settle the claim with defendant, nor did defendant pay the amount that the insurer claimed was owed. Consequently, our holding in *Rodriguez* does not control.

Next, defendant argues that because the issue of the amount of the overpayment was before the Hearings Division of the Workers' Compensation Board and adjudicated in that forum, the court lacked authority to impose a different amount of restitution in this case for the same overpayment. The state counters that when defendant pled guilty to the indictment, she admitted to an overpayment of $7,785 and that "no bar exists to the victim's recovery of the entire amount of its special damages."

---

[1] The record is unclear as to why the trial court awarded $7,783 rather than $7,785.

[2] Initially, the state argues that because defendant pled guilty to the crime of theft in the first degree and received a presumptive sentence, "appellate review is absolutely precluded" pursuant to ORS 138.222(2). We rejected a similar argument in *State v. McFee*, 136 Or App 160, 162, 901 P2d 870 (1995). For the reasons stated in *McFee*, restitution is not part of the presumptive sentence for which ORS 138.222(2) precludes our review.

■     The record indicates that the trial court and the state were aware that defendant disputed the amount of restitution that could be ordered. At the plea hearing, defendant argued:

> [DEFENSE COUNSEL]:   "[T]he State feels that she owes about $8,000, it's some substantial amount of money, I don't remember the amount. She went through an attorney, civilly, he prosecuted her case civilly throughout the entire administrative review process with SAIF, and the Judge, the Administrative Law Judge ruled against SAIF on their claim and ordered that she pay back some—
>
> THE DEFENDANT[:]   "Nineteen Hundred Dollars—
>
> [DEFENSE COUNSEL]:   "—Nineteen Hundred Dollars, awarded her $3200, or something like that. She—they took the rest of it. However, the State investigator for SAIF doesn't like her own organization, and so therefore we had a problem with getting this case resolved early, so that's why we need to have a sentencing thing. We're saying that—
>
> THE COURT:   "We need to have a restitution hearing then?
>
> [DEFENSE COUNSEL]:   "Right. We're saying that she's paid it back. They had a civil—the State elected by going through the civil process and when they lost and it's res adjudicata, [sic] or collateral estoppel, whatever, it's one of those two * * *."

Although defendant pled guilty to the indictment, nevertheless she disputed the amount of restitution that she could be ordered to pay at that time. At the restitution hearing, she again argued that she could not be ordered to pay restitution. We conclude that when defendant pled guilty, she admitted only to the theft and contested the amount of the overpayment.

■     Next, we turn to defendant's argument that the trial court lacked authority to impose more restitution than the amount of pecuniary loss determined at the previous administrative hearing. ORS 137.106 grants a trial court the authority to order restitution and provides, in part:

> "(1)   When a person is convicted of criminal activities or a violation under ORS 161.565, which have resulted in *pecuniary damages*, unless the presentence investigation report contains such a presentation, the district attorney shall

investigate and present to the court, prior to or at the time of sentencing, evidence of the nature and amount of such damages. In addition to any other sentence it may impose, the court may order that the defendant make restitution to the victim." (Emphasis supplied.)

ORS 137.103 supplies the following definitions for ORS 137.106:

"(2) 'Pecuniary damages' means all special damages, but not general damages, which a person *could* recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities and shall include, but not be limited to, the money equivalent of property taken * * *.

"(3) 'Restitution' means full, partial or nominal payment of pecuniary damages to a victim." (Emphasis supplied.)

ORS 137.109 provides, in relevant part:

"(1) [T]he court shall credit any restitution paid by the defendant to the victim against any judgment in favor of the victim in such civil action.

"(2) If criminal conviction in a criminal trial necessarily decides the issue of a defendant's liability for pecuniary damages of a victim, that issue is conclusively determined as to the defendant if it is involved in a subsequent civil action."

This case is unusual because there occurred an administrative hearing that determined the amount of pecuniary loss before the criminal proceedings. The issue, then, is whether the legislature intended under the criminal restitution statutes to limit the amount of restitution awarded to the amount of pecuniary loss determined in the previous administrative hearing. In *State v. Dillon*, 292 Or 172, 637 P2d 602 (1981), the Supreme Court discussed the import of the restitution statutes:

"Because of the nature of restitution, the statutory scheme presents a peculiar blend of both civil and criminal law concepts, but it is not a form of civil liability and recovery. The theory of restitution is penological: It is intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim. To make this relationship evident to the defendant, the permissible amount of restitution is measured by the injury to the victim.

The statute borrows from civil law in that it limits the type and amount of restitution to that which could be recovered as special damages in a civil suit against the defendant. * * *

"In spite of this resemblance, restitution was clearly not intended to be the equivalent of a civil award. * * * Instead, ORS 137.109(1) specifically provides that a restitution order does not impair a person's right to bring a civil action against the defendant, although there is a credit for amounts paid as restitution and some collateral estoppel effect under ORS 137.109(2). The legislative history makes it clear that the statute's purposes are penal, not compensatory. Thus, restitution must be understood as an aspect of criminal law, not as a quasi-civil recovery device.

"Although the civil law concepts incorporated in the restitution process do not convert a criminal sanction into civil compensation, they nevertheless have a significant function in the criminal proceeding. *They are a circumscription of the authority of the court.* The court does not have authority to require whatever recompense it deems would have rehabilitative and deterrent effect. Its authority is limited to what would otherwise be special damages recoverable in civil proceedings by specified persons or entities. Therefore, the first question before a sentencing court is 'what restitution, if any, will best serve rehabilitative and deterrent purposes?' and the second is *'would that be recoverable as special damages if this were a civil case*?'. The civil concepts are merely a limitation of criminal sentencing authority." 292 Or at 178-80 (emphasis supplied; footnotes omitted).

If the insurer were seeking recovery from the defendant for the overpayment of the benefits in a civil proceeding, it would not be entitled to judgment against defendant. Issue preclusion arises in a subsequent civil proceeding from an administrative decision if the issue in the two proceedings is identical, the issue was actually litigated and essential to a final decision, the party sought to be precluded had a full and fair opportunity to be heard on the issue as a party in the administrative proceeding and the prior proceeding was the type of proceeding to which a court will give preclusive effect. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103-04, 862 P2d 1293 (1994). Here, the amount claimed by the insurer had been litigated and adjudicated in the administrative hearing, and defendant paid that obligation. In any subsequent civil proceeding on that claim, defendant would

be able to defend successfully on the ground of issue preclusion.

We find nothing in the statutes concerning criminal restitution that supports the state's argument that the legislature would have intended that a defendant be ordered to pay restitution for an amount of pecuniary loss that has previously been adjudicated not to be owing. Rather, the implication is to the contrary. Moreover, it is unclear to us how requiring defendant to pay an amount that it has been determined that she does not owe serves the policies of rehabilitation and deterrence expressed by ORS 137.106. We conclude that because there could be no successful civil recovery by the victim, the trial court was without authority to make the award.[3] Consequently, the trial court erred.

Restitution order vacated; otherwise affirmed.

---

[3] Nothing in our opinion alters our holding in *State v. Hall*, 68 Or App 817, 683 P2d 157 (1984), where we recognized that a trial court may order restitution even after a civil judgment has been entered so long as the defendant is credited for amounts previously paid. In *Hall*, we did not decide whether a defendant could be ordered to pay more in restitution than the amount of pecuniary loss determined to be owed at a previous administrative hearing.